FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 05 2013

JAMES W. McCORMACK, CLERK
.By: _____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

HORTUS, LTD AND P. ALLEN SMITH,                                          **PLAINTIFFS**

VS.                              CASE NO.: 4:13 cv111 DPM

SOUTHERN RESOURCE CORPORATION,
FERRY-MORSE SEED COMPANY, JIFFY PRODUCTS
OF AMERICA, INC., AND JOHN DOE CORPORATIONS 1-5,        **DEFENDANTS**

### COMPLAINT

Hortus, Ltd., and P. Allen Smith, by and through their attorneys, Mitchell, Williams,

Selig, Gates & Woodyard, P.L.L.C., for their Complaint against Ferry-Morse Seed Company,

Southern Resource Corporation, Jiffy Products of America, Inc., and John Doe Corporations 1-5

allege and complain as follows:          This case assigned to District Judge _Marshall_
                                         and to Magistrate Judge _____ _Ray_

1.     Plaintiff Hortus, Ltd. ["Hortus"] is an Arkansas corporation with its principle

place of business in Little Rock, Arkansas located in Pulaski County.

2.     Plaintiff P. Allen Smith ["PAS"] is the President and CEO of Hortus.

3.     Defendant Southern Resource Corporation ["Southern Resource"] is a for profit

corporation organized under the laws of the State of Kentucky.  Its principal office is at 600

Stephen Beal Drive, P.O. Box 1620, Fulton, Kentucky.  Its registered agent for service of process

is Daniel Schrodt, 600 Stephen Beale Dr., Box 488, Fulton, KY  42041.  Its Kentucky

Organization Number is 0236914.

4.     Defendant Ferry-Morse Seed Company ["Ferry-Morse"] was a for profit

corporation organized under the laws of the State of Kentucky.  Its principal office was at 600

Stephen Beal Drive, P.O. Box 1620, Fulton, Kentucky.  Its registered agent for service of process

is Daniel Schrodt, 600 Stephen Beale Dr., Box 488, Fulton, KY  42041.  Its Kentucky

1

Organization Number is 0236914.  On May 31, 2012, Ferry-Morse filed an amendment with the State of Kentucky to change its name to "Southern Resource Corporation."

5.      Defendant Jiffy Products of America, Inc. ["Jiffy Products"] is a for profit corporation organized under the laws of the State of Delaware.  Its principal office is at 5401 Baumhart Road, Suite B, Lorain, Ohio 44053.  Its registered agent for service of process is United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

6.      Defendants John Doe Corporations 1-5 are the parent corporations of Ferry-Morse, Southern Resource, and Jiffy Products and/or are other corporations whose actions furthered, directed, assisted with, or profited from the allegations addressed herein.  The identity of these parties is unknown at this time, but pursuant to ARK. CODE ANN. §16-56-125 and the Affidavit attached as Exhibit A, when the identities of these parties are discovered, this pleading will be appropriately amended by substituting the true names of Defendants John Doe Corporations 1-5.

7.      This matter arises from a 2011 endorsement/sponsorship/product placement contract between Hortus/PAS and Ferry-Morse.

8.      Pursuant to the 2011 contract and 28 U.S.C. 1332, this Court has jurisdiction over this matter and the parties hereto, and the matter is governed by the laws of the State of Arkansas. Venue is proper in this Court.


## BACKGROUND FACTS

9.      On February 16-17, 2011, Ferry-Morse and Hortus entered into a contract entitled "PAS Endorsement/Sponsorship/Product Placement Agreement" [the "Contract"].[1]  The terms of the Contract were effective from January 1, 2011 until December 31, 2013.

---

[1] The Contract is attached as Exhibit B.

10.    Generally, the Contract was for PAS/Hortus to promote Ferry-Morse and Jiffy garden products including seeds, seed starters, and other products for three (3) years in return for valuable consideration ($450,000.00).

11.    Pursuant to the Contract, Hortus and PAS would provide the following services, including, but not limited to:

> Use of PAS' Garden Home for a Ferry-Morse sales meeting and tours, and feature Ferry-Morse in tours and media visits to the Garden Home;

> Allow the use of the P. Allen Smith brand and image by Ferry-Morse for the duration of the Contract;

> Production of commercials for "FM/Jiffy branded products" each year;

> Place Ferry-Morse seeds, seed starters, and new products in The Garden Home/PBS Show segments;

> Feature Ferry-Morse and Jiffy products on the PAS website, newsletters, Source Guide, and other digital/online media including but not limited to Twitter, Facebook, and YouTube;

> Feature Ferry-Morse products in magazine articles;

> Feature and use Ferry-Morse products during appearances, photographs, commercials, TV appearances, and book tour; and,

> Work with Ferry-Morse to develop a PAS branded product.

12.    As good and valuable consideration for these services, Ferry-Morse contracted to compensate Hortus four hundred and fifty thousand dollars ($450,000.00) payable as follows:

> $150.000.00 No later than February 1, 2011;

> $150,000.00 No later than February 1, 2012; and

➢ $150,000.00 No later than February 1, 2013.

13.     As of the date of this pleading, Hortus and PAS have complied with all terms of the Contract.

14.     In May 2012, Ferry-Morse contacted Hortus to inform Hortus that Ferry-Morse was contemplating selling substantially all of its assets to Seed Holdings, Inc. and FMC Acquisition Corp. [collectively, the "Purchaser"]. Ferry-Morse sought Hortus' consent (pursuant to the Contract) to assign the Contract to the Purchaser. The Waiver and Acknowledgement drafted by Ferry-Morse expressly represents that the Contract remains in "full force and effect and that no party is in breach of the [Contract]." Further, the Waiver and Acknowledgment "emphasized" that the sale would only impact the Contract by changing the counter-party, would not modify the terms of the Contract, and that "[a]ll applicable fees will continue to be made in the ordinary course." Hortus signed the agreement on May 8, 2012.[2]

15.     Upon information and belief, on May 18, 2012, Ferry-Morse sold its assets to the Purchaser which renamed itself Ferry-Morse Seed Company. The original Ferry-Morse changed its corporate name to Southern Resource at some point in May 2012.

16.     During the remainder of 2012 and into 2013, Hortus and PAS continued to fulfill the requirements of the Contract. Representatives of Southern Resource introduced Hortus/PAS to representatives of the Purchaser and initiated communications between the two. Based upon the representations in the Waiver and Acknowledgment, Hortus and PAS cooperated with the Purchaser and continued performing their duties under the Contract.

17.     Ferry-Morse/Southern Resource did not make the contractually required payment of $150,000.00 on February 1, 2013.

18.     On February 18, 2013, Southern Resource sent Horton/PAS a letter claiming that

---

[2] The signed Waiver and Agreement is attached as Exhibit C.

Horton/PAS had violated the confidentiality agreement in the Contract by communicating with the Purchaser.[3] In addition, Southern Resource claimed that since it no longer sold seeds under the name "Ferry-Morse" that PAS had been rendered incapable of performing the terms of the Contract. For these reasons, Southern Resource stated that it was terminating the Contract and would not pay the remainder of the Contract that came due on February 1, 2013.

19.     The letter was sent to Horton/PAS under a fax cover sheet for "Jiffy Products of America." The letterhead used by Southern Resource reads "Southern Resource Corporation (formerly known as Ferry-Morse Seed Company) c/o Jiffy Products of America, Inc." and lists its address as 5401 Baumhart Road, Suite B, Lorain, Ohio 44053. According to the website for Jiffy (www.jiffygroup.com) this is the United States address for Jiffy Products of America.

20.     The current Ferry-Morse website continues to contain images of PAS, monthly blog articles from PAS, and promote Jiffy products, including seeds, seed starters, and other garden products.

21.     Defendants Southern Resource/Ferry-Morse are the alter egos of Jiffy Products and/or John Doe Corporations 1-5. Upon information and belief, Southern Resource/Ferry-Morse were mere conduits through which Jiffy Products and/or John Doe Corporations 1-5 did business. Upon information and belief, the management and the operations of Southern Resource/Ferry-Morse were so assimilated and integrated with Jiffy Products and/or John Doe Corporations 1-5 that Southern Resource/Ferry-Morse are simply names through which Jiffy Products and/or John Doe Corporations 1-5 did business.

22.     Additionally, Southern Resource/Ferry-Morse and Jiffy Products and/or John Doe Corporations 1-5 participated in a joint venture or joint enterprise to mutually profit from the contract with Hortus/PAS. Upon information and belief, Southern Resource/Ferry-Morse and

---

[3] The February 18, 2013 letter is attached as Exhibit D.

Jiffy Products and/or John Doe Corporations 1-5 maintained a right of mutual control and management over the venture with an express or implied understanding that profits or losses would be shared.

23.     Additionally, Plaintiff should be allowed to pierce the corporate veil and pursue judgment against Jiffy Products and/or John Doe Corporations 1-5.  Upon information and belief, Southern Resource/Ferry-Morse own minimal liquid assets and are shell entities created by Jiffy Products and/or John Doe Corporations 1-5 for the purpose of fragmenting its operations and creating insolvency by sheltering cash and other assets from potential judgment creditors. Upon information and belief, the shell Defendants have the same officers and corporate address as Jiffy Products and/or John Doe Corporations 1-5.  Plaintiffs should be allowed to pierce the corporate veil and pursue judgment against Jiffy Products and/or John Doe Corporations 1-5 in order to prevent injustice.

24.     Whenever the term "Defendants" is utilized within this Complaint, such term collectively refers to and includes all named Defendants in this lawsuit.


## COUNT I:
## BREACH OF CONTRACT

25.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 24 as though fully set forth herein.

26.     Defendants contracted to pay Hortus/PAS $450.000.00 as consideration for a wide variety of promotional, marketing, and product placement services.  Defendants failed to pay the final installment of $150,000.00 due on February 1, 2013.

27.     Failure to pay the remaining $150,000.00 of the Contract on February 1, 2013 was a material breach of the Contract.

28.     Defendants' allegation that Hortus/PAS breached the confidentiality clause or are unable to perform their duties under the Contract – and thereby allegedly allowing Defendants to not pay the remaining $150,000.00 – is a breach of the implied covenant of good faith and fair dealing.  As such, under Arkansas law, it is evidence of Defendants' breach of contract.

29.     Plaintiffs have been damaged by Defendants' material breach of the Contract in amounts to be determined at trial, but believed to include, at a minimum, the outstanding amount owed under the Contract and interest on that amount.

## COUNT II:
## FRAUD & DECEIPT

30.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 29 as though fully set forth herein.

31.     Defendants Southern Resource/Ferry-Morse fraudulently had Plaintiffs sign the Waiver and Acknowledgment and then had Plaintiffs meet with the Purchasers to encourage discussions regarding the sales, marketing, and products with the Purchasers.   Southern Resource/Ferry-Morse then fraudulently accused Plaintiffs of breach of confidentiality in order to circumvent the requirements to pay the remainder owed under the Contract.  Defendants were under a duty to disclose to Plaintiffs that the Contract had not been transferred to Purchasers, but refused to do so.

32.     The misrepresentations and omissions were made deliberately, willfully, and maliciously to mislead Plaintiffs into reliance and action thereon.

33.     Plaintiffs had no opportunity to determine that Defendants' representations were false and misleading, and that the representations included material omissions.   Plaintiffs reasonable relied thereon to their substantial detriment and damages if it is determined that the

confidentiality provisions were in fact breached.

34.     Due to its reliance on Defendants' representations, Plaintiffs were and continue to be financially damaged as set forth herein by having fully performed under the Contract without receiving full payment.

35.     Defendants knew or should have known that their conduct would naturally and probably result in damage and injury to Plaintiff, yet they intentionally pursued a course of conduct for the purpose of breaching the Contract and causing injury to Plaintiffs.  Defendants are therefore liable for punitive and exemplary damages pursuant to Arkansas law.

### COUNT III:
### FRADULENT TRANSFER

36.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 35 as though fully set forth herein.

37.     Defendants violated ARK. CODE ANN. §4-59-204 by fraudulently selling Ferry-Morse in order to defraud Hortus/PAS of the amount owed under the Contract while continuing to reap the benefits performed by Hortus/PAS under the Contract.

38.     Defendants made the sale/transfer of Southern Resource/Ferry-Morse's assets with the actual intent to hinder, delay, or defraud Hortus/PAS of the remaining amount due under the Contract.

39.     The transfer was disclosed by the February 2012 letter, but concealed by failure to report the terms of the transfer to Hortus/PAS until February 2013.  The transfer was also a transfer of substantially all of the debtor's assets.

40.     Plaintiffs were damaged by Defendants' fraudulent transfer in an amount to be determined at trial.

## COUNT IV:
## APPROPRIATION

41.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 40 as though fully set forth herein.

42.     The new Ferry-Morse website prominently displays images of PAS as well as his blog writings and other information purporting his endorsement of the products available for purchase. The Jiffy brand continues to be heavily promoted and displayed on this website.

43.     Defendants have appropriated PAS' name and likeness for their own benefit, specifically purporting a continued association with and endorsement of the Jiffy brand for the purpose of profit.

44.     Plaintiffs were damaged, and continue to be damaged, by Defendants' appropriation of PAS' name and likeness for their own benefit in an amount to be determined at trial.

## ALTERNATIVE COUNT V:
## INJURY TO BUSINESS REPUTATION - DILUTION

45.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 44 as though fully set forth herein.

46.     The new Ferry-Morse website prominently displays images of PAS as well as his blog writings and other information purporting his endorsement of the products available for purchase. The Jiffy brand continues to be heavily promoted and displayed on this website.

47.     Defendants have appropriated PAS' name and likeness for their own benefit, specifically purporting a continued association with and endorsement of the Jiffy brand for the

purpose of profit.

48.     In the alternative to Count III for appropriation, to the extent that the Court may find that the "P. Allen Smith" mark is distinctive or famous in the State of Arkansas, Defendants have violated ARK. CODE ANN. §4-71-213 which prohibits that commercial use of a distinctive and famous mark. The use of the P. Allen Smith mark was willful and intentional to increase the Defendants' profit.

49.     Plaintiffs were damaged, and continue to be damaged, by Defendants' appropriation of PAS' mark for their own benefit in an amount to be determined at trial. Plaintiffs seek all damages allowed under ARK. CODE ANN. §4-71-213 including injunction of the use of the PAS mark and monetary damages.


### COUNT VI:
### TRADEMARK INFRINGEMENT

50.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 49 as though fully set forth herein.

51.     Hortus has owned the trademark for "P. Allen Smith Gardens" (Serial Number 75975147) since at least 1996. The new Ferry-Morse website prominently displays images of PAS as well as his blog writings and other information purporting his endorsement of the products available for purchase. The website specifically mentions P. Allen Smith Gardens. The Jiffy brand continues to be heavily promoted and displayed on this website.

52.     By using Hortus' trademarked P. Allen Smith Gardens in its advertizing specifically intended to sell Defendants' goods and services, Defendants have violated ARK. CODE ANN. §4-71-212 which prohibits trademark infringement. Defendants' continued trademark infringement after fraudulent transfer and attempted deceitful termination of the

10

Contract establish the Defendants' knowledge and bad faith in the continuing infringement.

53. Upon information and belief, Defendants have profited from infringing upon Plaintiffs' trademark, and continue to do so.

54. Plaintiffs were damaged, and continue to be damaged, by Defendants' appropriation of Plaintiffs' trademark for their own benefit in an amount to be determined at trial. Plaintiffs are entitled to the relief allowed pursuant to ARK. CODE ANN. §4-71-214 including an injunction, treble damages, and attorneys' fees.

## ALTERNATIVE COUNT VII:
## UNJUST ENRICHMENT

55. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 54 as though fully set forth herein.

56. The new Ferry-Morse website prominently displays images of PAS as well as his blog writings and other information purporting his endorsement of the products available for purchase. The Jiffy brand continues to be heavily promoted and displayed on this website.

57. Defendants (specifically Jiffy and John Doe Corporations 1-5) have benefited from the use of PAS's image, blog writings, and other information being associated with the Jiffy brand and purported continuing endorsement.

58. In the alternative to Count I for Breach of Contract, Plaintiffs are entitled to recover on a *quantum meruit* basis for the remaining $150,000.00 of the Contract for which the Defendants have been unjustly enriched.

WHEREFORE, Plaintiffs pray that they be granted judgment against Defendants in an amount to be determined at the trial of this matter, plus prejudgment interest, their attorneys' fees

and costs pursuant to ARK. CODE ANN. §16-22-308 and §4-71-214, expenses, and costs, post-judgment interest, punitive or exemplary damages, and for all other relief to which law, justice, or equity otherwise entitles or requires.  The amount of damages at issue is greater than $75,000.

Respectfully submitted,

**MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201
Phone:  501-688-8800
Fax:  501-688-8807
ccorless@mwlaw.com

Catherine Corless
Arkansas Bar No.  2009020

*Attorneys for Hortus, Ltd and P. Allen Smith*

12

## AFFIDAVIT OF CATHERINE CORLESS

STATE OF ARKANSAS        )
                         )§§
COUNTY OF PULASKI        )

Comes the Affiant, Catherine Corless, under oath and after having been sworn, doth state:

1.      My name is Catherine Corless.  I am attorney for the Plaintiffs in this matter.

2.      There are tortfeasors in this cause of action whose identities are unknown at the time of the filing of the Complaint.  These tortfeasors are designated in the Complaint as John Doe Corporations 1-5.

3.      Upon determining the identity of the tortfeasors, Plaintiffs shall amend the Complaint by substituting the real name(s) for the psuedo-name(s).

        Further, the affiant sayeth not.

                                    _____
                                    CATHERINE CORLESS
                                    AR Bar No. 2009020

                                    MITCHELL, WILLIAMS, SELIG,
                                        GATES & WOODYARD, P.L.L.C.
                                    425 W. Capitol Ave.
                                    Suite 1800
                                    Little Rock, AR 72201

        SUBSCRIBED AND SWORN to before me, a Notary Public, on this ____4th____ day of
____March____, 2013.

                                    _____
                                    NOTARY PUBLIC

My Commission Expires:

JAMIE MONTGOMERY
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires Jun, 17, 2017

EXHIBIT
A

**PAS Endorsement/Sponsorship/Product Placement Agreement**

This Agreement is entered into between Hortus, Ltd., an Arkansas corporation, having its principal place of business at 1722 South Broadway, Little Rock, Arkansas 72206 ("Hortus") and Ferry-Morse Seed Company a Kentucky corporation, having its primary place of business at 600 Stephen Beale Drive, Fulton, Kentucky 42041("Ferry-Morse") this January 13, 2010, 2011 3/15/2011

WHEREAS, Ferry-Morse is a manufacturer and distributor of Ferry-Morse Seed, any Seed Starting and,

WHEREAS, PAS ("PAS") is the President and CEO of Hortus; and,

WHEREAS, Ferry-Morse desires the Services of Hortus and PAS to endorse seeds and seed starters, and Hortus desires Ferry-Morse as a sponsor of PAS;

NOW THEREFORE, in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the sufficiency of which is acknowledged, it is agreed as follows:

Engagement and Term.  Effective from January 1, 2011 through and including December 31, 2013 (the "Term").

In consideration for the benefits set forth herein, Ferry-Morse shall provide Hortus with the fees and goods as set forth on **Exhibit A** (the "Sponsorship").  In return Hortus and PAS will provide Ferry-Morse the benefits as outlined in **Exhibit B** (the "Services").

1) Ferry-Morse will be the exclusive Seed and Seed Starting sponsor of Hortus and PAS.  If Ferry-Morse wishes to renew this Agreement for an additional term, Ferry-Morse must notify Hortus in writing three (3) months prior to the end of the Agreement.  Terms to be mutually agreed upon by both parties.

2) In all professional public appearances Hortus and PAS will not use competitive seeds or seed starter professionally or in any public appearances.

3) Covenants of Hortus and PAS.  Hortus and PAS covenant that they will not, during the Term of this Agreement:

   a) Promote or endorse any product which competes with Ferry-Morse;
   b) Make any public disparaging remarks about Ferry-Morse or it's employees;
   c) Engage in any conduct that is likely to create negative publicity for Hortus, PAS, Ferry-Morse:

4) Name and Likeness:  Any use of the name and/or likeness of PAS is expressly prohibited without the prior written approval of PAS.  Any breach of this provision of the agreement shall result in damages owed by Ferry-Morse to Hortus in an amount of $5,000 for every day during which the breach continues, after two weeks of discovery of the breach, up to a maximum of $100,000.  The parties hereby grant to each other a royalty-free, revocable, non-exclusive license to use and display the other's trademarks or logos ("Marks") throughout the Term of the Agreement.  The parties agree that all advertising and promotional materials and productions utilizing the Marks shall be of a first rate nature. The parties understand and agree that each has the right to and will monitor the quality of the other's promotional and advertising materials and productions provided under the Marks. Upon request from either party, the other party will provide a written description of the manner in which the Marks are used in connection with such promotions, advertising and productions so that either party may monitor use of the Marks and the quality of the promotion, advertising and production and otherwise protect and maintain its rights in the Marks. Each party acknowledges the other's exclusive right, title and interest in and to its Marks. Further, the parties agree and acknowledge that its use of the other's Marks shall inure to the other's benefit..Neither party shall commit, or cause or assist any third party to

EXHIBIT
B

commit any act changing, contesting or in any way impairing or attempting to impair the other's right, title and interest in and to the Marks. If either party learns of any action by a third party which might constitute an infringement of the other's rights in its Marks, or if any third party asserts that either party's use of the Marks constitute unauthorized use or infringement, that party shall immediately so notify the other. If either party prosecutes any alleged infringement of the Marks, or defends the other's right to use the Marks, that other party shall make all reasonable efforts to assist therewith.

5) Termination. In addition to any legal, equitable or other remedies which may be available, this Agreement shall be subject to immediate termination by:

a) Ferry-Morse in the event PAS is rendered incapable of performing, or unwilling to perform, the Services required by this Agreement;

b) Ferry-Morse if Hortus or PAS commits a crime involving moral turpitude or otherwise commits any act or are involved in any situation involving fraud, dishonesty, misuse of funds, or breach of trust, or that tend to bring Ferry-Morse or its products, services, distributors, dealers or affiliates into public ridicule, hatred, contempt, scandal, or disrespect, or engage in conduct that shocks or insults the community;

c) Ferry-Morse if Hortus, PAS or their agents violate the confidentiality provision set forth in paragraph 11 of this Agreement;

d) Hortus if Ferry-Morse or it's agents violate the confidentiality provision set forth in paragraph 11 of this Agreement;

e) Ferry-Morse in the event that Hortus or PAS breach a covenant set forth in Section 6 of this Agreement;

f) Hortus if Ferry-Morse fails to make any payment required under this Agreement within thirty (30) days following the date such payment is due, and such failure to pay is not remedied within ten (10) days written notice of such default; and

g) Either party if the other party otherwise materially breaches the terms of this Agreement or materially defaults in the performance of any obligation hereunder and fails to cure such breach or default within fifteen (15) days of receipt of written notice of such breach or default by the other party.

6) Indemnity. Hortus, for itself, its affiliates, employees, agents, contractors, successors and assigns, hereby agrees to indemnify, defend and hold harmless Ferry-Morse, its parent, sister and/or affiliated companies, directors, shareholders, officers, principals, partners, agents, servants, employees, representatives, contractors, affiliates, successors and assigns, jointly and severally, from any and all actions, causes of action, suits, proceedings, arbitrations, obligations, losses, damages, judgments, costs, charges, expenses, liabilities, fines, penalties or fees, including reasonable fees and expenses of legal counsel and expert witnesses, which may be imposed upon, incurred by or assessed upon Ferry-Morse or the other indemnities, jointly or severally, by reason of, arising from or relating to any acts, whether of omission or commission, committed or suffered by Hortus or PAS, its affiliates, employees, agents, contractors, successors or assigns, or anyone acting in its or their behalf for any purpose whatsoever, relating to or arising from its or their performance, use, exploitation or enjoyment of this Agreement or any right granted therein. Ferry-Morse and the other indemnities shall be entitled to be represented by counsel of their choice in any such indemnified action(s) at Hortus' expense.

7) Indemnity. Ferry-Morse, for itself, its affiliates, employees, agents, contractors, successors and assigns, hereby agrees to indemnify, defend and hold harmless Hortus, its parent, sister and or affiliated companies, directors, shareholders, officers, principals, partners, agents, servants, employees, representatives, contractors, affiliates, successors and assigns, jointly and severally, from any and all actions, causes of action, suits, proceedings, arbitrations, obligations, losses, damages, judgments,

costs, charges, expenses, liabilities, fines, penalties or fees, including reasonable fees and expenses of legal counsel and expert witnesses, which may be imposed upon, incurred by or assessed upon Hortus or the other indemnities, jointly or severally, by reason of, arising from or relating to any acts, whether of omission or commission, committed or suffered by Ferry-Morse, its affiliates, employees, agents, contractors, successors or assigns, or anyone acting in its or their behalf for any purpose whatsoever, relating to or arising from its or their performance, use, exploitation or enjoyment of this Agreement or any right granted therein.

8) Relationship of the Parties. Ferry-Morse and Hortus are and shall remain independent contractors and nothing contained herein shall be construed to create a joint venture, partnership, or a relationship of a principal and agent or employer and employee between Ferry-Morse and Hortus.

9) Injunctive Relief. Hortus and PAS acknowledges and agrees that violation of the confidentiality, disparagement and non-compete provisions of this Agreement would produce severe and irreparable injury to Ferry-Morse. Therefore, in the event Hortus or PAS breaches or threatens to breach any such provision, including but not limited to such covenants contained in paragraphs 1, 2, 3(a), 3(b), 3(c), 4 and 11 of this Agreement, Hortus and PAS agrees that Ferry-Morse shall be entitled to injunctive relief, both preliminary and permanent, restraining and enjoining such breach or threatened breach. All such remedies shall be in addition to any other remedies available to Ferry-Morse, in law or in equity.

10) Force Majeure. Neither party to this Agreement shall be responsible to the other party for nonperformance or delay in performance of the terms and conditions herein due to an event or occurrence beyond its reasonable control including, without limitation, acts of God, actions by governmental authority (whether valid or invalid), fires, floods, rain, windstorms, hurricanes, explosions, riots, natural disasters, wars, acts of terrorism, sabotage or labor problems; provided the party claiming force majeure promptly notifies the other party of the event of force majeure, the anticipated duration of the event of force majeure, and the steps being taken to remedy the failure. Should the event of force majeure continue beyond thirty (30) days, or such shorter time period as may be reasonable under the circumstances, either party may terminate this Agreement, and Ferry-Morse shall be entitled to a pro rata refund of any payments made for services not yet performed by Hortus or PAS. Service values to be mutually agreed upon by both parties.

11) Confidential Information. Hortus and Ferry-Morse shall maintain in confidence the business information of the other party and its distributors, dealers and affiliates and agrees not to disclose at any time or in any manner, either directly or indirectly, to any person or entity, except those employees or agents of Hortus or Ferry-Morse who are authorized to receive such information, any non-public information concerning the business of the other party and/or any of its distributors, dealers or affiliates without first obtaining the written consent of this other party. Such information shall include, but not be limited to, sales or technical information, promotions or any other non-public information which may be acquired in the course of carrying out the obligations hereunder. Hortus and Ferry-Morse specifically and expressly stipulate that as between them, all such matters are important, material, confidential, proprietary and may gravely affect the effective and successful conduct of the business of each company and their good will. The provisions of this paragraph 11 shall survive expiration or termination of this Agreement.

12) Limitation of Liability. PAS, for Hortus and it's agents, heirs, executors, administrators, personal representatives, next of kin, attorneys and assigns, acknowledges and agrees that Ferry-Morse shall not be liable for any Consequential, Incidental, Special, Indirect or Punitive Damages, as a result of any breach or claimed breach of this Agreement by Ferry-Morse or the expiration or termination of this Agreement.

13) Right to Contract/Talent Guild Membership. PAS represents and warrants to Ferry-Morse that he has the full right and entitlement to enter into this Agreement and that he has no other agreements, commitments or limitations that would prevent him from performing the duties and obligations stated in this Agreement for Ferry-Morse. PAS agrees that to the extent membership in any talent guild is

necessary in order to carry out his obligations hereunder, he either is or will become and remain a member in good standing of any such guild(s) at his expense.

14) <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.  Any claim or controversy arising from or relating to this Agreement, or its execution, enforceability, performance, breach or termination, shall be resolved only in the courts of the State of Arkansas having jurisdiction thereof, state or federal, located in Pulaski County, Arkansas. Ferry-Morse hereby consents to the jurisdiction of the courts of the State of Arkansas for purposes of this Agreement and this paragraph.

15) <u>Section Headings</u>.  The Section headings of this Agreement are for convenience or reference only and do not form a part hereof and do not in any way modify, interpret or construe the intention of the parties.

16) <u>Limitation By Law; Severability</u>.  All the provisions of this Agreement are intended to be subject to and to comply with all applicable mandatory provisions of law, state and federal, which may control the subject matter of this Agreement.  If any provision of this Agreement is declared to be invalid by a court of competent jurisdiction, then, to the fullest extent permitted by law: (a) the other provisions of this Agreement shall remain in full force and effect in such jurisdiction, and shall be liberally construed in order to carry out the intentions of the parties as nearly as may be possible; and (b) the invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

17) <u>No Waivers</u>.  No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

18) <u>Assignment</u>.  This Agreement can not be assigned by either party without the written consent of the other party, except for transfers to a wholly owned entity of the other party or a successor to the party.

19) <u>Notices</u>.  Any notices required to be given hereunder shall be sufficient if in writing and sent by personal delivery, by mail, by e-mail or by facsimile to the respective addresses of the parties set forth below, or such other address as may be designated in writing by one party to the other.

**If to: Ferry-Morse**
Ferry-Morse Seed Company Attention: John Hamrick
600 Stephen Beale Drive
Fulton, KY  42041
Telephone: 270-472-3400     Facsimile: 270-472-3402
E-mail:       jhamrick@ferry-morse.com
**If to Hortus:**
Hortus, Ltd., Attention: PAS
1722 South Broadway
Little Rock, AR.  72206
Telephone: 501-376-1894 x 10 Facsimile: 501-376-7997 E-mail: pas@pPASsmith.com

20. <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

21. <u>Entire Agreement; Amendments</u>.  This Agreement represents the final and entire agreement of the parties hereto with respect to the subject matter hereof and may be amended only by mutual agreement of the parties expressed in writing.

      IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by them or on their behalf as of the date set forth above.

---

**Sponsorship/Product Placement Agreement**

---

Ferry-Morse Seed Company
600 Stephen Beale Drive
Fulton, KY  42041

**Acceptance:**

Hortus, Ltd. and PAS hereby enter into a marketing and advertising Agreement with Ferry-Morse Seed Company.  The proposal of Services to be provided by Hortus Ltd. and PAS have been outlined in Exhibit B and the fees for these Services have been outlined in the Exhibit A and these Exhibits are hereby attached to and made a part of this Agreement.

Should any obligation under this Agreement be personal to PAS, Hortus will procure that PAS will abide by such undertakings.

If you agree to the roles and responsibilities outline above, please indicate by your signature below.  Please return one fully executed agreement to: Hortus, Ltd, Attn: Pam Holden, P.O. Box 164870, Little Rock, AR 72216, (501-376-1894 x 10).

AGREED to this 16th day of February

Ferry-Morse Seed Company

By: _____

Print Name: _Daniel M. Schradt_

Title: _President_

Hortus, Ltd.:

_____
P. Allen Smith, President/CEO

Date: _2/17/2011_

**Exhibit A**
**Sponsorship**

1.  <u>COMPENSATION</u>. Ferry-Morse agrees to pay $150,000.00 to Hortus, Ltd according to the following
    schedule:

    i.   $ 150,000.00 No later than <u>February 1, 2011</u>
    ii.  $ 150,000.00 No later than <u>February 1, 2012</u>
    iii. $ 150,000.00 No later than <u>February 1, 2013</u>

    <u>Royalty Rate of Retail Items</u>:  5.5% on all items sold in retailers with the name or likeness of P. Allen
    Smith.  If the PAS/FERRY-MORSE items are placed in any of the Big Box Retailers, the royalties will
    be 2% on seed packet, 3% on seed starting & window boxes and 5% on gift.

    As long as P. Allen Smith's brand and likeness is on the packaging, Hortus will received royalties until
    the the inventory is depleted or the product is taken off the market.

    In the event of a PAS branded line, a separate working agreement will be developed to define specific
    roles and responsibilities in the development and promotion of the line.

2.  <u>PRODUCT</u>:  Ferry-Morse agrees to provide product in camera-ready condition as required for product
    placement opportunities. The product to be supplied will be by mutual agreement of Ferry-Morse and
    Hortus.

    Ferry-Morse will have the exclusive ability to create products for retail distribution in the following
    gardening categories: Window Boxes, Packet Seed and Seed Starting kits.  PAS and Ferry-Morse shall
    agree to work together to develop Gardening Gifts (non-book related) for retail distribution. In the best
    interest of both parties, we will mutually explore the development of any gift idea that is agreed upon
    by the two parties.  These gift idea(s) will be produced and marketed exclusively by Ferry Morse with
    PAS endorsement.

    Ferry-Morse may work with Hortus during 2010 to begin product development of a PAS branded seed
    line, a window box, and garden gifts for retail sell-in presentations in 2011 and 2012. PAS must
    approve the design of each gift idea. Ferry-Morse will continue making best efforts to work with
    Hortus to develop PAS branded products throughout the term of the agreement.

    Ferry Morse and PAS will aggressively promote the sales of PAS branded items within the FM & PAS
    marketing programs.

    Late Payment Penalty: There will be a 5% penalty for any payment that is 30 days past due. There will
    be an additional 5% late payment fee for each 30-day increment that the payment is past due.

**Exhibit B**
**Services**

P. Allen Smith will incorporate Ferry-Morse seeds in the vegetable gardens and flower gardens at the Garden Home, the process and results will be presented in the various PAS media. The plants will then be used for cooking segments at the Garden Home from the indoor and outdoor kitchens. The flowers will be used for design/decorating segments at the Garden Home.

<u>Use of PAS Garden Home:</u>

Ferry-Morse can use P. Allen Smith's Garden Home for a sales meeting that will show the beautiful results of the trialing, showing the sales force how PAS and FM are taking ownership of lifestyle positioning and ideas. PAS will provide the tours (house and grounds), Allen as a speaker and will sign books bought by FM at a 20% discount for their guests.

- Access to the Garden Home Retreat for sales/marketing meeting (maximum 2 per year based on the following tariff per persons for services
    - o  A/V Equipment – TBD based on needs
    - o  Breakfast - $10/person
    - o  Lunch - $30/person
    - o  Dinner - $150/person
    - o  Facility – no charge
    - o  PAS Speaking Fee – no charge
    - o  Mid-day snacks & beverage – no charge
- Tours of the GHR with buyers and large customers (maximum 4 per year).
- Quarterly strategic planning meetings with P Allen Smith and / or Hortus LTD staff and Ferry-Morse marketing.

Ferry Morse will be featured in tours and media visits to the Garden Home

<u>Sales & Marketing Collateral/Photography:</u>
- P. Allen Smith brand and image will be utilized by FM for the duration of this agreement.
- Photography of Allen with FM's seed products will be produced for use in in-store POPs (point-of-purchase) and other sales & marketing materials.

<u>Syndicated TV Shows:</u>

PAS will produce a :30 TV commercial for FM/Jiffy branded products per year

Airing of 30-second FM/Jiffy products commercials in the nationally syndicated series – 26 weeks. Spots alternate weekly.  *(as of 5/2010, in 125 Stations in 122 Markets)*

PAS will produce a :10 sponsorship tag for FM/Jiffy branded products per year.

Airing of 10-second Ferry-Morse/Jiffy Brands commercials in the nationally syndicated series – 26 weeks. Spots alternate.

Airing of editorial content in the nationally syndicated series featuring Ferry Morse or Jiffy products – 3 segments each airing twice.

**PBS Shows:**

Incorporate Seeds & Seed starters and/or new product projects in The Garden Home/PBS Show segments. *(as of 5/2010, in 311 stations, 113MM households)*

**Digital/Online Media:**

Seed packets and FM Brand Name featured on home page in the "Products used at the Garden Home" section

Banner ads for FM and Jiffy product on PAllenSmith.com airing 52 weeks
1/15th share of voice. Banner ads will alternate.

PAS Weekly e-newsletter, 3 seasonal newsletter features (100,000+ subscriber)

Product feartures in P. Allen Smith Source Guide with link to FM site, 52 weeks

Ferry Morse segments will be will be available on demand 24/7 as part of the "online video library" during the term of our agreement, with links from related content throughout the site. All production and editing costs are covered by Hortus, Ltd as part of the fee.

Allen will write a monthly web blog for Ferrymorse.com.  PAS web blog kicks off fourth quarter of 2010.

FM products & brand name integrated into the social network activities of PAS Twitter, Facebook and YouTube channel.

Development of a social media promotion (i.e. seed of the month, seed packet giveaways, etc.) generating buzz with the online community and garden bloggers.

**Publications:**

Feature FM products in magazine articles when appropriate and approved by magazine editors, such as Woman's Day Special Interest Publications, Gardening How-to's, Celebrate Magazine, Active Years, Oxford American, Urban Farming, etc.

**PAS Appearances, Photography, Marketing Materials & Product Development:**

Distribution of seed packets at PAS speaking engagements, and TV appearances.

Allen will work with Ferry Morse in the development of a PAS branded product.

Provide 20 photography and :60 video reel for promotion of the new PAS branded product.

Provide messaging and copy points for new PAS branded product.

Hortus will create a 30-commercial and a 90 second web video for the product.
Ferry-Morse can visit the GH Gardens and take photos of plants grown from Ferry-Morse Seeds.

Ferry Morse will be featured in P. Allen Smith's cook book tour. With products distributed at the book signing events and featured on TV appearances.

**Hortus Photography Policy Statement**

This document is to set forth the Hortus, Ltd. policy regarding sponsor-related photography. Our goal is provide sponsors with the widest possible selection of photography in the most useful and easy-to-access form. Hortus must clearly manage the use and rights of each photo, as we have many interrelated media and editorial entities that must be considered as we integrate all of the photography needs of the company and individual sponsors.

1. Ferry-Morse will receive 100 digital photographs each year of their product in use that can be used during the term of our agreement. These photographs will not feature the name and likeness of PAS or clearly depict PAS' Garden Home Retreat or any other Hortus property. These photos may be used in any venue or format the client deems fit. These photos will be shots of sponsor products in action at PAS' Garden Home Retreat and in other PAS projects. These will not be styled and pre-produced shots, they will be action shots of how the products are used at the GHR or by PAS' staff in other places. These photos, without Allen, the Garden Homes or any creative or unique styling will be owned by Ferry-Morse

2. In addition, Ferry-Morse will be provided 3 high-resolution photographs of their product with PAS, based on a pre-approved creative and format specifications determined by mutual agreement of Ferry-Morse and Hortus. These products may be used during the term of our agreement on the client's website, in the client's trade catalogue and at the client's trade show. Each specific use of an image with PAS must be pre-approved in the form that the photo will appear. Any use of the photo beyond what is specifically stated in this paragraph must be pre-approved by PAS. If Ferry-Morse desires a shot with PAS beyond the 3 allotted in the agreement, they will be charged a fee based on a day rate of $900 per half day and $1,400 for a full day, plus out-of-pocket costs for props required that are not on hand, any postage/delivery charges and a $1,000.00 talent fee. The amount of time required to capture the requested shots will be estimated in advance by Hortus and pre-approved by Ferry-Morse.

## Photography Process

- Ferry-Morse fills out Photo Needs form that informs Hortus of the type of photos that would be of most interest to the Ferry-Morse, how the photos will be used, and any key dates of the importance. Hortus will attempt to make the photos available for key dates, but this may not always be possible based on seasonal and scheduling realities.

- Ferry-Morse will be advised when photographs are available for review on the Hortus online sponsor photography site.

- When Ferry-Morse selects the photos, they fill out a request form listing the photo numbers of the images they would like to have, and indicate the format, size and use of those images.

- Upon receipt of the request, a use agreement will be sent to the Ferry-Morse designated person to sign,

- When the signed agreement is received by Hortus, the photos will be sent either by email or mailed on a disk.

- All photographs are the property of Hortus, Ltd and are being licensed per the specific usage outlined in this document. Any use outside of these limitations is subject to copyright violation penalties and fines.

- At the termination of our agreement, all digital photographs must be returned to Hortus (except those owned by Ferry-Morse in item #1). Any photography being used in P. Allen Smith branded products will have 12 months to run out. P. Allen Smith will continue to receive royalties for the sale of these products until inventory is depleted.

**Photography:**

Hortus will provide FM with 100 new photographs per year of Ferry Morse in use in Allen's projects. (Separate photo agreement to follow.)

**Public Relations:**

Mention FM product lines, when appropriate, in PAS PR outreach and interviews (radio shows, industry pubs, consumer pubs, online garden blogger, etc.)

**Trade Show Video:**

Hortus will provide FM with a 3-5 minute video highlighting Ferry Morse show segments and video content produced by PAS for use as trade show video.



## WAIVER AND ACKNOWLEDGEMENT

Hortus, Ltd.
Attn: Mimi San Pedro
1722 South Broadway
Little Rock, AR 72206

Re:     PAS Endorsement/Sponsorship/Product Placement Agreement, dated January 13, 2010, by and between Hortus, Ltd.
        and Ferry-Morse Seed Company

Dear Ms. San Pedro,

Reference is made to the agreement listed above (including all exhibits, schedules and amendments thereto) (the "Endorsement
Agreement") by and between Ferry-Morse Seed Company ("Ferry-Morse") and Hortus, Ltd. (the "Consenting Party"). Ferry-
Morse is contemplating selling substantially all of its assets to Seed Holdings, Inc. and its affiliates, including FMC
Acquisition Corp (collectively, the "Purchaser"), and, in connection with such sale, assigning the Endorsement Agreement to
the Purchaser (collectively, with the sale, the "Transaction"). Pursuant to Section 18 of the Endorsement Agreement, consent
from the Consenting Party is required prior to Ferry-Morse assigning the Endorsement Agreement. Accordingly, we hereby
request that you acknowledge and consent to the assignment of the Endorsement Agreement by executing this letter where
indicated and returning the same at your earliest convenience (and in any event no later than May 11, 2012) to Daniel Schrodt,
President of Ferry-Morse via electronic mail at dschrodt@aol.com). By executing this letter, the Consenting Party hereby: (i)
consents to Ferry-Morse's transfer of the Endorsement Agreement to the Purchaser, (ii) acknowledges that the Transaction will
not be deemed or cause a breach of, or default under, and will not cause the termination of, or give rise to the right to terminate
under, the Endorsement Agreement and (iii) agrees and acknowledges that the Endorsement Agreement is in full force and
effect and that no party is in breach of the Endorsement Agreement.

We wish to emphasize that your consent to the Transaction and your cooperation in facilitating this transfer only impacts who
is the counter-party under the Endorsement Agreement and will not, in any way, modify the other terms of the Endorsement
Agreement.  All applicable fees will continue to be made in the ordinary course.

Please send a courtesy copy of this letter when executed to Mayer Brown LLP, attention Laura Richman (via facsimile at 312-
706-8194 or electronic mail at lrichman@mayerbrown.com).  If possible please also send a hard copy by U.S. mail or
overnight courier to Mayer Brown LLP, Attention: Laura Richman, 71 S. Wacker Dr., Chicago, IL 60606.

Thank you for your prompt attention to this matter. If you have any questions, please contact Neal Lewis, Chief Operating
Officer of Ferry-Morse, at (270) 472-4003 or Daniel Schrodt, President of Ferry-Morse, at (419) 577-0066.

Please note that the Transaction is highly confidential so you should not contact anyone at Ferry-Morse regarding any of the
foregoing other than Neal Lewis or Daniel Schrodt at the phone numbers indicated above.

Sincerely,

FERRY-MORSE SEED COMPANY

Name: Daniel Schrodt
Title: President

ACKNOWLEDGED AND AGREED
this 8 day of May, 2012:

HORTUS, LTD.

By: _____
Name: Mimi San Pedro
Title: Chief Operating + Marketing
        Officer

**EXHIBIT**
**C**
_____

02/18/2013   15:38   4462622853   JIFFY PRODUCTS   PAGE   02/03

Southern Resource Corporation
(formerly known as Ferry-Morse Seed Company)
c/o Jiffy Products of America, Inc.
5401 Baumhart Road
Suite B
Lorain, Ohio 44053


February 18, 2013


Via E-mail: pas@pPASsmith.com and Fax: 501-376-7997

Hortus Ltd.
Attention: PAS
1722 South Broadway
Little Rock AR 72206

Ladies and Gentlemen:

Reference is made to the PAS Endorsement/Sponsorship/Product Placement Agreement (the "PAS Agreement") dated January 13, 2010 between Hortus Ltd. ("Hortus") and Southern Resource Corporation, formerly known as Ferry-Morse Seed Company, a Kentucky corporation ("Southern").

On May 18, 2012 Southern sold substantially all of its assets to Seed Holdings, Inc. ("Seed") and its subsidiaries, FMC Acquisition Corporation, a Delaware corporation, which has subsequently changed its name to Ferry-Morse Seed Company, and AEM Acquisition ULC (collectively the "Buyers"). Seed also owns Plantation Products. Southern's parent company continues to own and operate Jiffy Products of America, Inc.

Although one of the Buyers is now called Ferry-Morse Seed Company, it is not the same company as Southern and does not have common ownership with Southern. The asset purchase agreement for this transaction did not provide for the assumption of the PAS Agreement by the Buyers. Prior to closing this asset sale, Southern paid the amount due under the PAS Agreement with respect to 2012.

Hortus is in breach of the PAS Agreement for reasons, including, but not limited to, the following:

Section 11 of the PAS Agreement required Hortus to maintain confidentiality of business information of Southern and its distributors, dealers and affiliates and provided that Hortus could not disclose non-public information concerning the business of Southern without the prior written consent of Southern. The parties to the PAS Agreement stipulated that all such matters are important, material, confidential and proprietary.



EXHIBIT
D

Hortus has violated the confidentiality provisions of Section 11 of the PAS Agreement. Hortus, PAS and/or their agents have engaged in discussions directly with representatives of the Buyers with respect to the PAS Agreement without the prior written consent of Southern.  We understand that in these discussions Hortus, PAS and/or their agents disclosed product, sales, technical and promotional information, including without limitation with respect to self-watering trays and other seed starting items. These disclosures violated Section 11 of the PAS Agreement.

Section 5(c) of the PAS Agreement provides that Southern may terminate the PAS Agreement in the event that Hortus or PAS or their agents violate the confidentiality provision set forth in paragraph 11 of the PAS Agreement.

In addition, Section 5(a) of the PAS Agreement provides that Southern may terminate the PAS Agreement in the event that PAS is rendered incapable of performing the PAS Agreement. As a result of the sale of Southern's assets to the Buyers, Southern is no longer engaged in the business of selling or distributing seeds and seed starters.  In particular, Southern does not engage in the business of selling or distributing Ferry-Morse seeds and does not have any right to do so. Although Southern's affiliates, including Jiffy Products (N.B.) Ltd.,  manufacture and sell seed starters, these affiliates are not parties to the PAS Agreement.  As a result, PAS is incapable of performing the services required by the PAS Agreement because those services were to be provided to Southern, which is no longer engaged in active business.  In fact, to the extent services have been provided pursuant to the PAS Agreement since May 18, 2012, those services have been provided to a third party.  As stated above, Seed's subsidiary that is now known as Ferry-Morse Seed Company is a company that is separate and distinct from Southern, is not a party to the PAS Agreement and did not assume the PAS Agreement.

As a result of the violation of Section 11 of the PAS Agreement by Hortus, PAS and/or their agents, Southern hereby terminates the PAS Agreement pursuant to Section 5(c) of such agreement. Southern also terminates the PAS Agreement pursuant to Section 5(a). Accordingly, neither Southern nor any of its affiliates will make any payments under the PAS Agreement with respect to 2013, including without limitation the payment reference in Section 1.III of Exhibit A to the PAS Agreement.

Very truly yours,

Southern Resource Corporation

By: _Arstein Knutson_

Arstein Knutson, President

705219860.4 11.170706